UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LOREN KLYNE,

                Plaintiff,

v.

SEAN LINDROS, et al.,

                Defendants.

CASE NO. C12-5105 BHS

ORDER GRANTING
PLAINTIFF'S MOTION FOR AN
EXTENSION AND GRANTING
IN PART AND DENYING IN
PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendants Sean Lindros ("Lindros") and the City of Olympia's ("City") (collectively "Defendants") motion for summary judgment (Dkt. 16) and Plaintiff Loren Klyne's ("Klyne") motion for an extension of time (Dkt. 19). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby grants Klyne's motion and grants in part and denies in part Defendants' motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On February 8, 2012, Klyne filed a civil rights complaint against Defendants asserting numerous causes of action.  Dkt. 1.

On February 20, 2013, Defendants filed a motion for summary judgment and properly noted it for consideration on March 15, 2013.  Dkt. 16.  On March 8, 2013, Klyne filed a motion for an extension of time to respond to Defendants' motion.  Dkt. 19.  On March 11, 2013, Defendants responded to Klyne's motion.  Dkt. 21.  On March 15, 2013, Klyne replied.  Dkt. 23.  Although Klyne technically missed his filing deadlines, the Court prefers to determine matters on the merits where, as here, Defendants are not prejudiced by a short extension of the filing deadlines.  Therefore, the Court grants Klyne's motion and will consider the untimely briefs.

On March 24, 2013, Klyne responded to Defendants' motion.  Dkt. 24.  On April 1, 2013, Defendants replied.  Dkt. 30.

## II. FACTUAL BACKGROUND

At about 2:45 am on February 13, 2010, Officer Lindros responded to a dispatch regarding a disorderly male subject screaming and hitting things at the Intercity Transit Center.  Dkt. 18, Declaration of Sean Lindros ("Lindros Dec."), ¶ 5.  Lindros describes the initial encounter as follows:

> When I arrived at the Transit Center in police uniform, I observed a male matching the dispatch description who was yelling at the sky. I now know he was Parnell Overton. Not surprisingly, a group of people stood around watching Mr. Overton. I positioned myself directly in front of Overton with the group behind him in my line of sight and began my efforts to de-escalate him in accordance with my training until back up officers arrived. He had bloodshot watery eyes, slurred speech, the smell of alcohol, and bloody knuckles. My personal safety and my de-escalation efforts required that I concentrate intensely on Overton.
> At that time a male, whom I now know to be Loren Klyne, left the group and began to walk in my direction. As he did this, he stared directly into my eyes, gave me an awkward smile, and placed his hands in his pockets. He then walked by me and positioned himself to my rear. Given

1  the situation, any ordinary person would have known that Overton needed
   to be controlled, that I was there as a police officer for that purpose, and
2  that moving behind me in that manner would likely disrupt my efforts. For
   these reasons and consistent with my training and experience, I considered
3  Mr. Klyne to be a potential threat to my safety.

4  *Id*. ¶¶ 6–7.

5       On the other hand, Klyne declares that he was at the Transfer Station to catch the

6  bus and was harmlessly leaning against a pillar close to where his bus would stop.

7  Specifically, Klyne describes the initial encounter as follows:

8           I went to a gas station nearby to buy some licorice, and came back in
        time to catch the last bus of the night.
9           When I returned, I wanted to be sure to catch that bus, and wanted to
        be as close as possible to where the bus would be coming in without
10       disrupting anyone.
            Officer Lindros had been engaged with another subject, who I later
11       learned was named Pernell Overton, a black male in a patterned sweater.
            When I walked onto the Transit Center site, I noticed that they were
12       speaking to each other.
            But it was not something that particularly caught my attention, other
13       than a police officer being present near where I was to take the bus. I
        watched idly, thinking about other things.
14          I smiled at the Officer, to show I was friendly and not a threat. I was
        not nervous, since I was not interested in the investigation nor was I doing
15       anything wrong.
            I was tired, so I walked over to lean against a pillar, marked as "I".
16          There were several other people at about the same distance as I was,
        from Officer Lindros.
17          My body was turned slightly toward the interaction between Officer
        Lindros and Mr. Overton, but my shoulders were in line with Officer
18       Lindros' shoulders.
            In other words, we were standing in a line with each other, about 10
19       feet away.
            I was watching idly, but not particularly staring at them.
20          I never spoke to Mr. Overton.
            I only spoke to Officer Lindros after he first spoke to me.
21
   Dkt. 25, Declaration of Loren Klyne ("Klyne Dec."), ¶¶ 5–22.
22

ORDER - 3

1    After the initial encounter, Lindros declares that he had a brief conversation with

2 Klyne.  Lindros's version of the exchange is as follows:

3           I said to Klyne, "Don't come up behind me like this during my
           investigation, you need to move." He replied, "I know my rights." Given
4          that he had not obeyed my first order, I again stated, "You need to move
           because you are distracting me from my investigation." Klyne smiled and
5          said, "I'm not moving, I know my rights."

6 Lindros Dec., ¶ 9.  Klyne disagrees with this version of the conversation and declares that

7 the exchange was as follows:

8           When Officer Lindros first addressed me, he said, "Do not stand
           behind me while I am conducting an investigation."
9           I was very taken aback by his statement, which wasn't accurate, and
           my mind was elsewhere, I was confused, and I did not want the officer to
10         think I was ignoring him, so I simply and accurately pointed out, "I am not
           standing behind you."
11          He then asked, very confrontationally, "Do you want to be
           arrested?"
12          I responded, "Isn't it my right to stand here?" I was confused. I was
           merely asking for clarification. I said the first thing that came to my mind. I
13         asked this question because I trusted that a police officer would be able to
           inform me if I was within the bounds of the law by standing in a certain
14         area.

15 Klyne Dec., ¶¶ 33, 42, 46, & 49.

16    After the brief conversation, Lindros arrested Klyne for obstruction of justice.

17 Lindros Dec., ¶ 10.  Lindros contends that he applied handcuffs to Klyne in accordance

18 with training and experience and that Klyne did not resist.  *Id*., ¶ 11.  Although charges

19 were filed against Klyne, they were later dismissed.

20

21

22

# III. DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc*., 809 F.2d at 630.  The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically

1   attested by that party contradict facts specifically attested by the moving party.  The

2   nonmoving party may not merely state that it will discredit the moving party's evidence

3   at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

4   *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

5   nonspecific statements in affidavits are not sufficient, and missing facts will not be

6   presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

7   **B.      42 U.S.C. § 1983**

8          Section 1983 is a procedural device for enforcing constitutional provisions and

9   federal statutes; the section does not create or afford substantive rights.  *Crumpton v.*

10  *Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  In order to state a claim under 42 U.S.C. §

11  1983, a plaintiff must demonstrate that (l) the conduct complained of was committed by a

12  person acting under color of state law and that (2) the conduct deprived a person of a

13  right, privilege, or immunity secured by the Constitution or by the laws of the United

14  States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by*

15  *Daniels v. Williams*, 474 U.S. 327 (1986).

16         In this case, Klyne alleges numerous violations of his constitutional rights.  Dkt. 1,

17  ¶ 5.2(a)–(h).  The parties' briefs, however, concentrate on two issues: whether Lindros

18  had probable cause to arrest Klyne and whether Lindros used excessive force.  Therefore,

19  the Court will only address these issues.

20

21

22

1      **1.      Probable Cause**

2      "The Fourth Amendment requires that a law enforcement officer have 'probable

3      cause' to arrest an individual without a warrant."  *United States v. Jensen*, 425 F.3d 698,

4      704 (9th Cir. 2005).  The test for whether probable cause exists is whether

5              at the moment of arrest the facts and circumstances within the knowledge
               of the arresting officers and of which they had reasonably trustworthy
6              information were sufficient to warrant a prudent man in believing that the
               petitioner had committed or was committing an offense.
7
       *United States v. Bernard*, 623 F.2d 551, 559 (1980) (internal quotation and citations
8
       omitted).  A determination as to whether probable cause exists requires a "practical,
9
       common-sense" decision based on the totality of the circumstances.  *See Illinois v. Gates*,
10
       462 U.S. 213, 214 (1983).
11
12             In this case, Lindros arrested Klyne for the crime of obstructing a public officer.

13     The particular statute provides that "A person is guilty of obstructing a public . . . officer

14     if he/she . . . obstructs a person whom he/she knows is a public . . . officer and such . . .

15     officer is acting in a government function."  Olympia Municipal Code 9.08.020.

16     Therefore, the question the Court must consider is whether the facts and circumstances

17     within the knowledge of Lindros were sufficient to warrant a prudent man in believing

18     that Klyne had obstructed or was obstructing Lindros in the act of de-escalating Overton.

19             Defendants contend that the answer to that question is yes because "Lindros gave

20     a lawful order to [Klyne]; [Klyne] objectively refused to obey; and [Klyne's] actions

21     interfered with Officer Lindros' efforts to de-escalate Overton's disorderly conduct."

22     Dkt. 16 at 6–7.  Defendants, however, fail to recognize that there is a question of fact

1    whether Lindros gave Klyne a clear, lawful order.  Under Washington law at the time of

2    the incident, the arrestee must be actually obstructing the officer "and the [arrestee] both

3    knew that the officer was discharging his duties and intended to obstruct such duties . . .

4    ."  *State v. Howard*, 154 Wn. App. 1009, 2010 WL 95100 at *2 (2010).  Viewing the

5    facts in the light most favorable to Klyne, Lindros asked Klyne if he wanted to be

6    arrested and Klyne responded with "Isn't it my right to stand here?"  Dkt. 30 at 3.  Based

7    on this version of the facts, the Court finds that a prudent man would not believe that

8    Klyne was intentionally obstructing Lindros.  Therefore, the Court denies Defendants'

9    motion for summary judgment on this issue because material questions of fact exist for

10   trial.

11        **2.      Excessive Force**

12        The "'reasonableness' of a particular use of force must be judged from the

13   perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

14   hindsight."  *Graham v. Connor*, 490 U.S. 386, 396 (1989), *overruled on other grounds by*

15   *Saucier v. Katz*, 533 U.S. 194 (2001).  In *Graham*, the Court reasoned that, in excessive

16   force cases:

17        "Not every push or shove, even if it may later seem unnecessary in the
          peace of a judge's chambers," *Johnson v. Glick*, 481 F.2d [1028,] 1033 [
18        (2d Cir.1973) ], violates the Fourth Amendment. The calculus of
          reasonableness must embody allowance for the fact that police officers are
19        often forced to make split-second judgments—in circumstances that are
          tense, uncertain, and rapidly evolving—about the amount of force that is
20        necessary in a particular situation.

21   *Id*. at 396–97.  Relevant factors in determining whether the officer used an objectively

22   reasonable amount of force include, but are not necessarily limited to, the crime's

1   severity, whether the detained person posed an immediate threat to the officer's safety,

2   and whether the subject was resisting arrest.  *See Wilson v. Meeks*, 52 F.3d 1547, 1553

3   (10th Cir. 1995) (citing *Graham*, 490 U.S. at 396).

4         In this case, Klyne asserts that Lindros used excessive force in effectuating the

5   arrest.  Klyne cites *Graham* for the proposition that the "act of the arrest itself and

6   detention and transported [sic] involved therein, plus any force used to carry them out is

7   per-se excessive force, no matter how slight the force used."  Dkt. 24 at 20.  This

8   statement is, at best, an overly broad and, at worst, a complete misstatement of the law.

9   Moreover, in *Graham*, the arrestee "sustained a broken foot, cuts on his wrists, a bruised

10  forehead, and an injured shoulder; he also claims to have developed a loud ringing in his

11  right ear that continues to this day."  *Graham*, 490 U.S. at 390.  Klyne alleges that he

12  suffered "great pain and temporary injury" when Lindros handcuffed him.  The Court

13  finds that under no set of facts alleged could a reasonable juror conclude that Lindros

14  used excessive force to effectuate the arrest of Klyne.  Therefore, the Court grants

15  Defendants' motion for summary judgment on Klyne's excessive force claim.

16        **3.     Qualified Immunity**

17        The doctrine of qualified immunity recognizes that holding officials liable for

18  reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions

19  in challenging situations.  *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009).  When the

20  Court determines that a right has been violated, to attach liability "[t]he contours of the

21  right must be sufficiently clear that a reasonable official would understand what he is

22

1  doing violates that right."   *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640

2  (1987)).

3  In this case, the Court has found that questions of fact exist on the issue of whether

4  Klyne's constitutional right was violated and must now address whether the right was

5  clearly established.  In *Crowe v. County of San Diego*, 608 F.3d 406 (9th Cir. 2010),

6  outlined the relevant law as follows:

7  The Supreme Court has held that "it is inevitable that law
   enforcement officials will in some cases reasonably but mistakenly
8  conclude that probable cause is present." *Anderson v. Creighton*, 483 U.S.
   635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). When that happens, the
9  officials "should not be held personally liable." *Id*. We have held that
   officers are immune from suit "when they reasonably believe that probable
10  cause existed, even though it is subsequently concluded that it did not,
   because they 'cannot be expected to predict what federal judges frequently
11  have considerable difficulty in deciding and about which they frequently
   differ among themselves.' " *Smiddy v. Varney*, 665 F.2d 261, 269 (9th Cir.
12  1981) (quoting *Bivens v. Six Unknown Named Agents of the Federal
   Bureau of Narcotics*, 456 F.2d 1339, 1349 (2d Cir. 1972) (Lumbard, J.,
13  concurring)), *overruled on different grounds by Beck v. City of Upland*, 527
   F.3d 853, 865 (9th Cir. 2008).

14
15  *Crowe*, 608 F.3d at 433.  The Court finds that a reasonable officer could not have

16  believed probable cause existed because, if taken as true, Klyne asking what his rights

17  were is not knowingly and intentionally obstructing an officer.  Therefore, the Court

18  denies Defendants' motion for summary judgment on the issue of whether Lindros is

19  entitled to qualified immunity.

    **4.    *Monell* Liability**

20  In order to assert a claim against the City under 42 U.S.C. § 1983, Klyne must

21  show that Lindros acted through an official custom, pattern or policy that permits

22

1   deliberate indifference to, or violates, Klyne's rights; or that the City ratified the unlawful

2   conduct. *Monell v. Department of Social Servs.*, 436 U.S. 658, 690-91 (1978). The City's

3   action must be the moving force behind Klyne's damages. *Board of Commissioners of*

4   *Bryan County v. Brown*, 520 U.S. 397, 405 (1997).

5          In this case, there are no facts to support a claim against the City.  Although

6   Lindros has received complaints, none of the complaints were sustained. *See* Dkt. 30 at

7   5–6.  Therefore, the Court grants Defendants' motion for summary judgment on Klyne's

8   claim against the City because Klyne has failed to show that there exist any material

9   questions of fact for trial.

10  **C.      State Law Claims**

11         Klyne asserts claims for false arrest, false imprisonment, battery and assault,

12  malicious prosecution, outrage, and negligence. Dkt. 1.  With regard to false arrest and

13  false imprisonment, Defendants argue that probable cause is a complete defense.  Dkt. 16

14  at 8.  The Court, however, has found that there exist questions of fact whether Lindros

15  had probable cause to arrest Klyne.  Therefore, the Court denies Defendants' motion on

16  these claims.

17         With regard to the other claims, Klyne has failed to carry his burden.  Klyne fails

18  to cite a single state law case in support of his positions.  Other than unsupported attorney

19  argument in support of the claims, Klyne fails to show that there exists a question of fact

20  as to any element of any of the remaining claims.  Therefore, the Court grants

21  Defendants' motion for summary judgment on Klyne's battery and assault, malicious

22  prosecution, outrage, and negligence claims.

1

**IV. ORDER**

2        Therefore, it is hereby **ORDERED** that Klyne's motion for an extension of time

3 (Dkt. 19) is **GRANTED**, and Defendants' motion for summary judgment (Dkt. 16) is

4 **GRANTED in part** on Klyne's excessive force, battery and assault, malicious

5 prosecution, outrage, and negligence claims and **DENIED in part** on Klyne's claims for

6 violation of his Fourth Amendment rights, false arrest, and false imprisonment.

7        Dated this 23rd day of April, 2013.

8

9                          BENJAMIN H. SETTLE

10                        United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22